UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PAULA NARBUT, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | *  Civil Action No. 1:17-cv-10639-ADB |
| MANULIFE FINANCIAL CORPORATION, | * |
| | * |
| Defendant. | * |
| | * |
| | * |

**MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS AND PLAINTIFF'S CROSS MOTION TO ADJUDGE SERVICE PERFECTED OR GRANT AN EXTENSION OF TIME TO PERFECT SERVICE**

BURROUGHS, D.J.

On April 14, 2017, Plaintiff Paula Narbut ("Plaintiff") filed a complaint alleging negligence against Manulife Financial Corporation ("Defendant"), which is headquartered in Ontario, Canada. [ECF No. 1 ¶¶ 20–27 ("Compl.")]. The Court granted Plaintiff extensions to effect proper service on Defendant on November 21, 2018, [ECF No. 5], May 28, 2019, [ECF No. 7], and, most recently, on September 4, 2019, [ECF No. 11]. Currently before the Court is Defendant's motion to dismiss for insufficient service of process, [ECF No. 14], and Plaintiff's cross motion to adjudge service perfected or extend time to perfect service, [ECF No. 19]. For the reasons set forth below, Defendant's motion, [ECF No. 14], is <u>DENIED</u> and Plaintiff's cross motion, [ECF No. 19], is <u>GRANTED</u> in part and <u>DENIED</u> in part.

**I.   BACKGROUND**

**A.   Factual Background**

For purposes of this Order, the relevant facts are drawn from Plaintiff's complaint, [Compl.], and viewed in the light most favorable to Plaintiff. See <u>Ruivo v. Wells Fargo Bank,</u>

N.A., 766 F.3d 87, 90 (1st Cir. 2014) (citations omitted).  In addition, "[w]hen faced with a Rule 12(b)(5) motion for insufficiency of process, this [C]ourt may 'look beyond the pleadings and may consider affidavits and other documents to determine whether process was properly served.'"  Afrasiabia v. Awad, No. 14-cv-10239, 2015 U.S. Dist. LEXIS 132092, at *28 (D. Mass. Sep. 14, 2015) (quoting Morse v. Mass. Exec. Office of Pub. Safety, No. 12-cv-40160, 2013 U.S. Dist. LEXIS 48938, at *1 (D. Mass. Apr. 4, 2013)).

On April 15, 2014, Plaintiff was walking through the lobby of a building owned by Defendant.  [Compl. ¶¶ 13–14].  The lobby floor was wet with rain and Plaintiff slipped, fracturing her left arm and injuring her lower back.  [Id. ¶¶ 15–17].  As a result of the injury to her arm, Plaintiff's doctors advised surgery.  [Id. ¶ 18].  Plaintiff claims that Defendant failed to remedy the wet floors or to warn her of the dangerous conditions caused by the wet floors in violation of Defendant's duties "to maintain [the lobby] in a reasonably safe condition" and to warn her of any dangers on the premises.  [Id. at ¶¶ 21–22].  Plaintiff maintains that her injuries were the direct and proximate result of Defendant's negligence.  [Id. at ¶ 26].

**B.     Procedural Background**

On April 14, 2017, Plaintiff filed her complaint alleging one count of negligence against Defendant.  [Compl. ¶ 20–27].  Plaintiff sent a letter to Defendant's General Counsel James Gallagher ("Gallagher") in Boston, Massachusetts on July 24, 2017, asking him to waive service, but the letter was returned as undeliverable.  [ECF No. 19-1 at 2–3].  Plaintiff then sent the same request to Gallagher at a Toronto, Ontario address on August 9, 2017, and to Defendant's legal counsel, Edwin Landers ("Landers"), in Boston, Massachusetts on September 20, 2017, both of which went unanswered.  [ECF Nos. 19-2, 19-3].  Because Defendant did not respond to Plaintiff's requests for waiver of service, on October 17, 2017 Plaintiff engaged Stamped

Services, Inc. ("Stamped"), a process server in Toronto, Ontario, to effect service on "Michael Doughty [President and CEO of Manulife Canada] or Authorized Manulife Agent." [ECF No. 19-4 at 2]. On November 21, 2017, Stamped notified Plaintiff via e-mail that they had successfully served a law clerk at Defendant's Toronto office. [ECF No. 19-5 at 18]. Despite following up with Stamped each month thereafter, Plaintiff was unable to obtain proof of service. [ECF No. 4-1 at 1 (affidavit of Ryan T. Allen, counsel for Plaintiff, attesting to monthly follow up with Stamped)].

On May 1, 2018, Plaintiff sought an extension of time to perfect service, [ECF No. 4], which the Court granted on November 21, 2018, [ECF No. 5]. On December 4, 2018, Plaintiff contacted Landers again, this time by e-mail, again asking Defendant to waive service, but Landers replied the following day stating, "I do not have authority to waive service." [ECF No. 19-3 at 2–3]. On December 18, 2018, Plaintiff engaged a different process server, Dominion Process Servers ("Dominion"), once again attempting to effect service on "Michael Doughty or Authorized Manulife Agent." [ECF No. 10-1 at 7]. Plaintiff then sought an additional extension of time to perfect service, [ECF No. 6], which the Court granted on May 28, 2019, [ECF No. 7]. After many delays, Plaintiff determined that Dominion was a "scam outfit" and once again engaged Stamped to perfect service. [ECF No. 19 at 3]. Due to continuing difficulties with Stamped, on August 23, 2019 Plaintiff requested a further extension of time within which to serve Defendant, [ECF No. 10], and the Court granted another extension until October 22, 2019, [ECF No. 11].

On September 23, 2019, Plaintiff engaged the Ministry of the Attorney General in Ontario ("the Ministry") to effect service on "Michael Doughty or Authorized Manulife Agent." [ECF No 19-7 at 2]. Shortly thereafter, on October 9, 2019, the Ministry served a senior legal

3

assistant at Defendant's Toronto office. [ECF No. 19-9 at 3]. On October 23, 2019, the Ministry notified Plaintiff that it had completed service, [ECF No 19-8 at 2], and Plaintiff filed an acknowledgement of service with the Court that same day, [ECF No. 12].

On October 30, 2019, Defendant moved to dismiss for insufficient process and insufficient service of process. [ECF No. 14]. Plaintiff failed to timely respond to Defendant's motion and on November 21, 2019, the Court ordered Plaintiff to show cause why her complaint should not be dismissed for the reasons articulated in Defendant's motion. [ECF No. 18]. On December 4, 2019, in response to the Court's Order, Plaintiff filed an opposition to the motion to dismiss with a cross motion requesting that the Court either deem service perfected or grant an extension of time to perfect service. [ECF No. 19]. Defendant then filed a reply. [ECF No. 20].

**II.     Legal Standard**

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirements of service of process must be satisfied." Cichocki v. Mass. Bay Cmty. Coll., 174 F. Supp. 3d 572, 575 (D. Mass. 2016) (quoting Aly v. Mohegan Council-Boy Scouts of Am., No. 08-cv-40099, 2009 WL 3299951, at *1 (D. Mass. Apr. 20, 2009)). "A party filing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(5) 'is essentially contesting the manner in which process of service was performed.'" Egan v. Polanowicz, No. 13-cv-40092, 2014 WL 5475078, at *3 (D. Mass. Oct. 24, 2014) (quoting Ramirez de Arellano v. Colloides Naturels Int'l, 236 F.R.D. 83, 85 (D.P.R. 2006)). "Where . . . 'the sufficiency of process is challenged under Rule 12(b)(5), . . . [the] plaintiff bears the burden of proving proper service.'" Cichocki, 174 F. Supp. 3d at 575 (quoting Aly, 2009 WL 3299951, at *2); see also Connolly v. Shaw's Supermarkets, Inc., 355 F. Supp. 3d 9, 14 (D. Mass. 2018) ("Once

adequately challenged, the burden shifts to plaintiff to show service was proper." (citing Rivera-Lopez v. Municipality of Dorado, 979 F.2d 885, 887 (1st Cir. 1992))).

**III.   DISCUSSION**

Defendant moves to dismiss Plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(4), insufficient process, and 12(b)(5), insufficient service of process, arguing that Plaintiff's service was untimely, outside the Court's imposed deadline, and not served on the proper individual.  [ECF No. 15 at 1–2, 4].  As Defendant challenges the timeliness and improper delivery of the summons, rather than its contents, the Court reviews the motion under Rule 12(b)(5), and not 12(b)(4).  See JLB LLC v. Egger, No. 19-cv-11890, 2020 WL 2769678, at *10 n.4 (D. Mass. May 28, 2020) (reviewing motion under 12(b)(5) and not 12(b)(4) because mode of delivery was the only challenge); Connolly, 355 F. Supp. 3d at 14 ("A motion to dismiss for improper process under Fed. R. Civ. P. 12(b)(4) pertains to the 'content of the summons' and a motion to dismiss for improper service of process under Fed. R. Civ. P. 12(b)(5) challenges the 'mode of delivery.'" (quoting Taite v. Bridgewater State Univ., 236 F. Supp. 3d 466, 472 (D. Mass. 2017))).  In her response to the Court's Order to show cause (which functions as Plaintiff's opposition to the motion to dismiss), Plaintiff added a cross-motion asking the Court to consider service perfected or to grant an extension of time to perfect service.  [ECF No. 19 at 1].

It is undisputed that Defendant is a foreign corporation.  See [ECF No. 15 at 2; ECF No. 19 at 1].  Rule 4 of the Federal Rules of Civil Procedure provides that, "[u]nless federal law provides otherwise or the defendant's waiver has been filed," service may be effected outside of the United States upon a foreign corporation, "in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery . . . ."  Fed. R. Civ. P. 4(h).  Subsection (f) of Rule 4 provides three ways in which service on a foreign entity may be accomplished:

> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention . . . ; (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means . . . , [by] using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or (3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f).

The clause in subsection (f)(2), "if there is no internationally agreed means," implies that service must first be attempted under subsection (f)(1), "by any internationally agreed means," if such a means exists. See id. "'A canvas of the cases in [the First] [C]ircuit regarding service of process demonstrates great deference to the Hague Convention'—the internationally agreed means of service identified by Rule 4(f)(1)." Anova Applied Elecs., Inc. v. Hong King Grp., No. 17-cv-12291, 2020 WL 419518, at *3 (D. Mass. Jan. 24, 2020) (quoting Furukawa Elec. Co. of N. Am. v. Yangtze Optical Fibre and Cable Co., No. 05-11219, 2005 WL 3071244, at *3 (D. Mass. Nov. 16, 2005) (stating that the difficulty and expense of complying with the Hague Convention is not a reason to excuse compliance)). Accordingly, where Defendant is a foreign corporation, the Court will examine the sufficiency of Plaintiff's October 2019 service in Ontario with deference to the Hague Convention. See Fed. R. Civ. P. 4(f)(1).

### A. Timeliness of Service

Defendant first argues that service was not timely because Plaintiff did not attempt service until October 17, 2017, which was "approximately 186 days" after the filing, and "never provided good cause" for her failure to attempt service prior to that date. [ECF No. 15 at 3]. Typically, when a plaintiff misses the ninety-day window to effect service, they must show good cause before a court will extend the time to perfect service. See Fed R. Civ. P. 4(m). However, Rule 4(m) specifically excludes service in foreign countries from this deadline for service. Id. ("[S]ubdivision (m) does not apply to service in a foreign country under Rule 4(f), 4(h)(2)

. . . ."); see Wang Yan v. ReWalk Robotics Ltd., No. 17-cv-10169, 2018 WL 1041541, at *4 (D. Mass. Feb. 23, 2018) ("[T]he requirements of Rule 4(m) do not apply to the foreign defendants . . . ."); Turpin v. Mori Seiki Co., 56 F. Supp. 2d 121, 129 (D. Mass. 1999) (granting plaintiff a sixty-day extension to perfect service on a Japanese corporation and noting, "an exception to the . . . time limit for service of process has been carved out for service upon defendants in foreign countries").

Because Defendant is a foreign corporation, Plaintiff's attempts at service and requests for extensions of time to perfect service were not subject to Rule 4(m)'s ninety-day time limit for service.  See Fed R. Civ. P. 4(m).  In addition, the Court repeatedly granted Plaintiff extensions to effect service, thereby mooting any claims of unexcused delay.  See [ECF Nos. 5, 7, 11].

### B. Timeliness of October 2019 Service

Defendant next argues that Plaintiff failed to meet the timeline imposed by the Court's September 4, 2019 Order, which granted "an extension of time to October 22, 2019 to effect service of process."  [ECF No. 15 at 4; ECF No. 11].  Defendant claims that because Plaintiff filed her "acknowledgement of service" on October 23, 2019 (one day after the deadline), the complaint should be dismissed.  Federal Rule of Civil Procedure 4(*l*)(3) states that "[f]ailure to prove service does not affect the validity of service."  The Ministry did not notify Plaintiff until October 23, 2019 that it had served Defendant on October 9, 2019.  [ECF No. 19-8 at 2.]  The Court finds that Plaintiff effected service of process on October 9, 2019, which was within the timeline and according to the terms of the extension in the Court's September 4, 2019 Order.  See [ECF Nos. 11, 12].

7

### C.     Service on Improper Individual

Defendant's final argument in support of dismissal is that service on a senior legal assistant was improper, as she was not the appropriate party for service pursuant to the Ontario Rules of Civil Procedure.  [ECF No. 15 at 5].

Each signatory member of the Hague Convention must establish a "[C]entral [A]uthority" to receive and process service requests from foreign plaintiffs.  Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 698–99 (1988).  The Central Authority is responsible for serving the defendant "in a manner compatible with the internal law of the country where service is to be made."  Golub v. Isuzu Motors, 924 F. Supp. 324, 326 (D. Mass. 1996).  Canada has designated the Ministry as the Central Authority for Ontario.  Central Authorities (Articles 2 and Art. 18(3)) [Canada], Hague Conference on Private International Law ("HCCH"), at 4 (June 2020), https://assets.hcch.net/docs/15b5f973-5121-49f0-8a73-9b44d02c7dc5.pdf; see also Trump Taj Mahal Assocs. v. Hotel Servs., 183 F.R.D. 173, 179–80 (D.N.J. 1998) ("The recommended provincial Central Authority for Ontario, where [defendant] is located, is [the] Ministry of the Attorney General for Ontario . . . ." (internal quotation marks omitted)); Basham v. Tillaart, No. M2002-00723-COA-R3CV, 2003 WL 21780974, at *3 (Tenn. Ct. App. July 31, 2003) ("Canada has designated the Ministry of the Attorney General for Ontario . . . as the Central Authority for Ontario.").  When service requests are sent to the Ministry, the Ministry performs service pursuant to "the internal law" of Canada, in this case, the Ontario Rules of Civil Procedure.  See Golub, 924 F. Supp. at 326; Basham, 2003 WL 21780974, at *3; Canada - Central Authority & Practical Information, HCCH, https://www.hcch.net/en/states/authorities/details3/?aid=248 (last visited July 1, 2020) (listing the Ontario Rules of Civil Procedure).  Rule 16 of the Ontario Rules of Civil Procedure provides

that service may be made on a corporation "by leaving a copy of the document with an officer, director or agent of the corporation, or with a person at any place of business of the corporation who appears to be in control or management of the place of business." Ontario R. Civ. P. 16.02(c).

Not surprisingly, the First Circuit has not analyzed what constitutes an "agent" or someone "in control or management" of a business under the Ontario Rules of Civil Procedure. However, the Federal Rules contain similar language regarding service on an individual who is in a position of control within a corporation. See Fed. R. Civ. P. 4(h) ("[A] domestic or foreign corporation . . . must be served . . . by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process . . . ."). Courts analyzing this language have found that

> [t]he determination whether an individual is "a managing or general agent" depends on a factual analysis of that person's authority within the organization. One occupying this position typically will perform duties which are "sufficiently necessary" to the corporation's operations. He should be "a responsible party in charge of any substantial phase" of the corporation's activity. In brief, it is reasonable to expect that such an agent will have broad executive responsibilities and that his relationship will reflect a degree of continuity.

Egan v. Tenet Health Care, 193 F. Supp. 3d 73, 83-84 (D. Mass. 2016) (quoting Furukawa, 2005 WL 3071244, at *2).

In Lott v. KForce, Inc., the court found that service on a "field operations coordinator" was improper because her "professional tasks [did] not constitute broad executive responsibilities sufficient to support characterizing her as a managing or general agent." No. 18-cv-12182, 2019 WL 3573154, at *10 (D. Mass. Aug. 6, 2019) (internal quotation marks omitted) (citing Egan, 193 F. Supp. 3d at 84); see also Aldabe v. Envtl. Servs., No. 16-cv-11067, 2017 WL 7035658, at *8 (D. Mass. Sep. 20, 2017) (finding that service on an office administrator was insufficient because she was not authorized to accept service). The First Circuit has held that a

plaintiff's unsupported assertions that service was made on an officer or authorized agent are insufficient where there is nothing to indicate that the person served is "an officer, a managing or general agent" or otherwise authorized to receive service of process. Saez Rivera v. Nissan Mfg. Co., 788 F.2d 819, 821 (1st Cir. 1986) (holding that a plaintiff who served a Japanese corporation via an office in Puerto Rico "put forward nothing other than the process server's assertion that she served a person . . . who stated . . . he was the presiding officer" (internal quotation marks omitted)).

Here, although Plaintiff's attempt at service was through the appropriate Central Authority, the Ministry, Defendant's argument that its senior legal assistant was not the appropriate individual to serve finds support in both the Ontario Rules of Civil Procedure and case law interpreting a similarly worded provision in the Federal Rules. See [ECF No. 15 at 5]. Plaintiff counters that the individual presented herself as an agent "with apparent authority to accept service on the defendant's behalf." [ECF No. 19 at 5]. Here, as in Saez Rivera, however, Plaintiff offers no additional support for the legal assistant's authority to accept service other than the Central Authority's proof of service that the legal assistant did, in fact, accept service. [ECF No. 19-9]. Accordingly, the Court finds that service on Defendant's senior legal assistant was not service on an "officer, director or agent . . . or with a person . . . who appears to be in control or management of the place of business" within the meaning of the Ontario Rules of Civil Procedure, and was therefore improper. See Ontario R. Civ. P. 16.02(c).

### D.     Plaintiff's Cross Motion

In her opposition to the motion to dismiss, Plaintiff requested either an order adjudging that service was perfected or an extension of time to perfect service if the Court found that service was improper. [ECF No. 19 at 1]. As the Court has found that service was improper, see

Section III.C, supra, Plaintiff's cross motion to adjudge service perfected, [ECF No. 19], is DENIED.

As to Plaintiff's motion for an extension of time to perfect service, the good cause standard that courts typically apply when determining whether to extend service does not apply to service in a foreign country. See Fed R. Civ. P. 4(m) (stating that "subdivision (m) does not apply to service in a foreign country"). Some courts have applied a "flexible due diligence standard" to determine whether a delay in service to a foreign country should be excused. See Ballard v. Tyco Int'l, Ltd., No. 04-cv-01336, 2005 WL 1863492, at *5–6 (D.N.H. Aug. 4, 2005) (applying flexible due diligence standard); see also Lozano v. Bosdet, 693 F.3d 485, 488–89 (5th Cir. 2012) ("[M]ost courts faced with a challenge to the timeliness of foreign service have applied a 'flexible due diligence' standard to determine whether the delay should be excused." (quoting 1 Steven S. Gensler, Federal Rules of Civil Procedure: Rules and Commentary 60 (2012 ed.)); Burda Media, Inc. v. Blumenberg, No. 97-cv-07167, 2004 WL 1110419, at *5 (S.D.N.Y. May 18, 2004), aff'd sub nom. Burda Media, Inc. v. Viertel, 417 F.3d 292 (2d Cir. 2005) (applying flexible due diligence standard).

When undertaking a flexible due diligence analysis, "courts weigh a plaintiff's reasonable efforts and diligence against the prejudice to the defendant resulting from the delay." In re Veon Ltd. Sec. Litig., No. 15-cv-08672, 2018 WL 4168958, at *8 (S.D.N.Y. Aug. 30, 2018); Ballard, 2005 WL 1863492, at *5 (applying flexible due diligence standard by weighing good faith efforts of plaintiff's failed attempts at service against prejudice to defendant for the delay). "Courts have observed that the good cause standard for delay in service of process and the due diligence standard . . . are practically the same." In re Veon Ltd. Sec. Litig., 2018 WL 4168958, at *8 (internal quotation marks omitted) (quoting In re Bozel S.A., No. 16-cv-03739, 2017 WL

3175606, at *2 n.4 (S.D.N.Y. July 25, 2017)); see Del Raine v. Carlson, 826 F.2d 698, 704 (7th Cir. 1987) ("[G]ood cause . . . . in practice . . . . is the same standard as due diligence . . . ." (internal quotation marks omitted)).

"[G]ood cause is likely (but not always) to be found when the plaintiff[']s failure to complete service in timely fashion is a result of a third person, typically the process server, the defendant has evaded service of the process or engaged in misleading conduct, [or] the plaintiff has acted diligently in trying to effect service . . . ." McIsaac v. Ford, 193 F. Supp. 2d 382, 383 (D. Mass. 2002) (quoting Wright & Miller, Federal Practice and Procedure: Civil 3d § 1137, at 342 (2002)); see Benjamin v. Grosnick, 999 F.2d 590, 592 (1st Cir. 1993) (good cause existed when plaintiff "completed all of the steps within their power necessary to effectuate such service," but "the error rested with the deputy sheriff [processor]").

Here, Defendant argues that "[t]he Plaintiff's failure to effectuate service of process is not by reason of an unavoidable accident or because of default or neglect by the officer to whom such process is committed," [ECF No. 20 at 5], despite the fact that it was the process server—the Central Authority—and not the Plaintiff that effected service on the wrong individual, [ECF No. 19-7 at 2]. Defendant further argues that the delay in service has prejudiced their ability to locate witnesses and to investigate the lobby where the accident occurred. [ECF No. 20 at 6]. This is also unpersuasive as Defendant has been aware of the suit through Plaintiff's repeated service attempts and communications with counsel for Defendant dating back to 2017.[1] See [ECF Nos. 19-1, 19-2, 19-3, 19-4, 19-5]. Accordingly, Plaintiff's cross-motion to extend time to perfect service, [ECF No. 19], is GRANTED.

---

[1] The Court does not fault Defendant for standing on its rights, but does note that if Defendant was concerned about the passage of time, it could have exhibited some civility—even self-interested civility—and waived service or accepted the service it got as adequate.

12

### E.     Service Via Defendant's Counsel

Because Plaintiff has attempted discovery through Rule 4(f)(1), "internationally agreed means," with little success, the Court will use its authority under Rule 4(f)(3), which indicates that a court may order service be made "by other means not prohibited by international agreement, as the court orders."  Fed. R. Civ. P. 4(f)(3).  This is particularly appropriate where, as here, Defendant has long been aware of the pendency of the lawsuit and the goal of notice has clearly been met.

The First Circuit has stated that "Rule 4(f)(3) does not require exhaustion of all possible methods of service before a court may authorize service by 'other means,' such as service through counsel . . . ."  AngioDynamics, Inc. v. Biolitec AG, 780 F.3d 420, 429 (1st Cir. 2015); see Igloo Prod. Corp. v. Thai Welltex Int'l Co., 379 F. Supp. 2d 18, 19–20 (D. Mass. 2005) ("Federal courts have authorized a variety of methods of service pursuant to Rule 4(f)(3), including . . . . delivery to the defendant's attorney . . . .").  A number of courts have found that service on United States-based counsel for a foreign defendant is an appropriate method of service under Rule 4(f)(3).  See Angiodynamics, Inc. v. Neuberger, No. 18-cv-30092, 2018 U.S. Dist. LEXIS 188584, at *7 (D. Mass. Nov. 5, 2018) (finding that service on U.S. counsel for a defendant residing in Dubai was proper under Rule 4(f)(3)); Russell Brands, LLC v. GVD Int'l Trading, SA, 282 F.R.D. 21, 26 (D. Mass. 2012) (approving service on U.S. counsel for Brazilian corporate defendant); Forum Fin. Grp. v. President & Fellows of Harvard Coll., 199 F.R.D. 22, 25 (D. Me. 2001) (deeming service on U.S. counsel for defendant residing in Russia appropriate under Rule 4(f)(3)).  Further, the Court is not bound by the Hague Convention in directing Plaintiff to effect service on Defendant's counsel *within* the United States consistent

with Federal Rule of Civil Procedure 4 and, as applicable, Massachusetts Rule of Civil Procedure 4.[2]

"In addition to complying with the requirements of Rule 4(f)" and 4(h), "service of process must comport with constitutional notions of due process," which require that "parties to an action must be given notice that is 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" Igloo Prods. Corp., 379 F. Supp. 2d at 19 (quoting Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)).  Other courts have found that, under Rule 4(f)(3), service on counsel for a defendant comports with Due Process requirements.  See Angiodynamics, Inc., 2018 U.S. Dist. LEXIS 188584, at *7; Orsi v. Sheik Falah Bin Zayed Bin Sultan Al-Nahyan, No. 11-cv-10451, 2012 U.S. Dist. LEXIS 136798, at *7 (D. Mass. Sep. 25, 2012); Forum Fin. Grp., 199 F.R.D. at 25.

Accordingly, Plaintiff's cross motion to extend time to perfect service, [ECF No. 19], is GRANTED.  Plaintiff shall serve counsel for Defendant, Edwin Landers or Ashley Nicotra of Morrison Mahoney LLP in Boston, Massachusetts, who have entered their appearance in this matter.

## IV. CONCLUSION

Defendant's motion to dismiss, [ECF No. 14], is DENIED.  Plaintiff's cross motion to adjudge service perfected or to extend time to perfect service, [ECF No. 19], is GRANTED in part and DENIED in part.  Plaintiff shall serve Defendant's U.S.-based counsel, Edwin Landers or Ashley Nicotra of Morrison Mahoney LLP in Boston, Massachusetts.  Plaintiff shall effect

---

[2] The Court notes that the Ontario Rules of Civil Procedure expressly allow for service on a party's attorney.  Ont. R. Civ. P. 16.03(2).

service and file proof of service no later than 30 days from the date of this Order or face dismissal.

**SO ORDERED.**

July 1, 2020 /s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE